## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **FLYING W FARMS, LLC,** | ) | |
| | ) | |
| **S&Z FARMS LLC,** | ) | |
| | ) | |
| **DOUBLE T RANCH, LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No.  2:19-cv-02627** |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **EST INC. d/b/a ENVIRO SCIENCE** | ) | |
| **TECHNOLOGIES** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **VINAY PATEL** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiffs Flying W Farms LLC ("Flying W"), S & Z Farms LLC ("S&Z"), and Double T Ranch, LLC ("Double T") (collectively "Plaintiffs") assert the following causes of action against Defendant EST, Inc. ("EST") and Defendant Vinay Patel ("Patel") (collectively "Defendants"), and allege the following in support:

### Parties, Jurisdiction, and Venue

1.      Plaintiff Flying W is a Missouri limited liability company because each of its members reside in and are citizens of Missouri.

2.      Plaintiff S&Z is a Missouri limited liability company because each of its members reside in and are citizens of Missouri.

3.      Plaintiff Double T is an Oklahoma limited liability company because each of its

1

members reside in and are citizens of Oklahoma.

4.     Defendant EST is a Kansas corporation with its principal place of business in Olathe, Kansas.

5.     Defendant Patel is the sole officer, director, and shareholder of EST.  Upon information and belief, Patel is a citizen of Kansas.

6.     This Court has jurisdiction because there is a diversity of citizenship and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §1332.

7.     Venue is proper in this Court because, among other reasons, Defendants are residents in this District. *See* 28 U.S.C. § 1391(b)(1).

## Factual Allegations

8.     Plaintiffs are engaged in the farming business.

9.     Plaintiffs purchased EST products through Royal-Grow Products, LLC ("Royal-Grow") and/or, on occasion, directly from EST (the "Products").

10.     At all relevant times, EST manufactured the Products.

11.     Many of the Products must meet regulatory requirements set by government agencies. These requirements include strict limits on the ingredient makeup of the Products. EST was made aware of the regulatory requirements, and Plaintiffs conditioned the purchase of the Products on EST meeting the regulatory requirements.

12.     Many of the Products have failed to meet regulatory requirements or are defective in other ways.

13.     Flying W purchased various Products directly or indirectly from EST during the time frame March 2018 through June 2019, including:

     a.   0-0-50;

b.   Corn Boost Hybrid – Transcend;

c.   E-Maxx – Organic Input;

d.   E-Max;

e.   Enzyme Max;

f.   Herbicide Booster 3rd Gen;

g.   Herbicide Booster AY Nano Pro;

h.   PLA Litter Max;

i.   Seed Soak 4000;

j.   Luxurite;

k.   Micro Pack;

l.   NPK 32-0-0 (low salt);

m.   NPK 30-0-0;

n.   NPK 32-0-0-10 – Supreme Plant Food;

o.   pH Max;

p.   Resist;

q.   Sweetner;

r.   Bean Boost Hybrid - Transcend; and

s.   Ultra Sweet.

14.     The Products Flying W purchased from EST failed to meet the regulatory requirements and/or Defendants' own stated standards.

15.     Flying W's purchases of defective Products total $232,784.58.

16.     S&Z purchased various Products directly or indirectly from EST during the time frame February 2017 through December 2018, including the following:

    a.   0-0-50;

    b.   Supreme Plant Food w/ Sulfur;

    c.   9-19-9 Legume (Soybean) Blend;

    d.   E-Max;

    e.   Herbicide Booster 3rd Generation;

    f.   Micropak;

    g.   Resist XL;

    h.   RG Calcium Nitrate 15-0-0-36;

    i.   Soil Revitalizer 10-0-0-72;

    j.   Supreme Plant Food 32-0-0 w/o Sulfur;

    k.   Sweetner;

    l.   Transcend; and

    m.  Ultra Sweet.

17.    The Products S&Z purchased from EST failed to meet the regulatory requirements and/or Defendants' own stated standards.

18.    S&Z's purchases of defective Products total $176,085.28.

19.    Double T purchased various Products directly or indirectly from EST during the time frame March 2013 through August 2017, including:

    a.   All Purpose Plant Food 20-20-20;

    b.   Soil Revitalizer 10-0-0;

    c.   Supreme Plant Food 32-0-0;

    d.   Ultra Sweet with Enzyme Pack;

    e.   Missing Link Plant Food

      f.   0-24-0;

      g.   Pasture Medic;

      h.   32-0-0 with Sulfur;

      i.   E-Max;

      j.   9-0-0-20;

      k.   Micro-Pack;

      l.   ZN, MN;

      m.  Supreme Plant Food with Iron; and

      n.   Enzyme Max.

20.     The Products purchased from EST failed to meet the regulatory requirements and/or Defendants' own stated standards.

21.     Double T's total purchases of defective Products total $70,765.49.

22.     The defective products purchased by Plaintiffs, as listed above, are hereinafter collectively referred to as the "Defective Products."

23.     Throughout the timeframe of Plaintiffs' purchases, EST represented that the EST Products met the regulatory requirements and contained what was on the Defective Products' label. These representations were false.

24.     EST also represented that certain EST fertilizer products, including the N-P-K products, contained nanotechnology when they did not.

25.     EST also represented that its 32-0-0 product had less than 2% salt, which it did not.

26.     At the center of EST's misdeeds is its founder Vinay Patel, who is the sole decision-maker, officer, director, and shareholder of the company. Patel is the exclusive decision-maker for EST.

27.     Upon information and belief: Patel has used EST to enrich himself personally at the expense of consumers, like Plaintiffs, in complete disregard for EST's legal exposure and corporate formalities. EST is a shell that Patel uses to commingle personal and corporate assets.

## COUNT I
## BREACH OF CONTRACT
### (Against EST)

28.     Plaintiffs reallege and incorporate by reference the above allegations as if fully stated herein.

29.     Plaintiffs and EST entered into a series of agreements whereby EST was to provide Products to Plaintiffs.

30.     The agreements are valid and enforceable.

31.     Plaintiffs have fully performed under the agreements by paying for the Defective Products.

32.     The agreements are definite in their terms.

33.     The agreements are free from unfairness, fraud, and overreach.

34.     Defendant EST breached the agreements in the following ways, among others:

   a.     Failing to supply Products that met regulatory requirements;

   b.     Failing to supply Products that met Plaintiffs' requirements;

   c.     Failing to supply Products that met EST's own representations and specifications; and

   d.     Failing to supply merchantable Products.

35.     Instead of meeting these basic commitments, EST supplied Plaintiffs with Defective Products.

36.     For these same reasons, Defendant EST breached the duty of good faith and fair dealing implied in these agreements.

37.     As a result of these breaches, Plaintiffs have suffered damages and will continue to suffer damages.

WHEREFORE, Plaintiffs respectfully request judgment against Defendant EST in an amount to be proven at trial in excess of $75,000, for the costs incurred herein, for pre- and post-judgment interest, and for such other relief as the Court deems just and proper.

### COUNT II
### UNJUST ENRICHMENT
### (Against EST and Patel)

38.     Plaintiffs reallege and incorporate by reference the above allegations as if fully stated herein.

39.     Plaintiffs have conferred a benefit upon Defendants by, among other things, purchasing Products from EST.

40.     Defendants recognized these benefits and accepted them.

41.     Defendants accepted these benefits without compensating Plaintiffs and without providing the Products as warranted.

42.     Instead, Defendants supplied Plaintiff with Defective Products.

43.     Due to the Products' defects, it would be inequitable to permit Defendants to continue retaining the benefits conferred by Plaintiffs without compensating them for those benefits.

WHEREFORE, Plaintiffs respectfully request judgment against Defendants in an amount to be proven at trial in excess of $75,000, for the costs incurred herein, for pre- and post-judgment interest, for punitive damages, and for such other relief as the Court deems just and proper.

7

## COUNT III
### FRAUD
### (Against EST and Patel)

44.     Plaintiffs reallege and incorporate by reference the above allegations as if fully stated herein.

45.     Throughout the time Plaintiffs purchased the Products, Defendants made false representations, including:

      a.   That the Products met regulatory requirements;

      b.   That the Products met Plaintiffs' requirements;

      c.   That the Products contained what was on their label;

      d.   That certain fertilizer Products contained nanotechnology; and

      e.   That the 32-0-0 Product had less than 2% salt.

46.     Defendant Patel—acting in his individual capacity and as representative of EST—made these representations repeatedly over the course of Defendants' relationship with Plaintiffs. The representations were made during in-person meetings at the EST facility, during phone calls, on the labels affixed to the Defective Products, on invoices that accompanied the Defective Products, and in other written communications.

47.     Defendants knew these representations were false or made these representations without knowledge of their truth or falsity.

48.     Defendants intentionally made such representations so that Plaintiffs and others would purchase the Defective Products.

49.     Plaintiffs reasonably relied upon Defendants' representations related to the Defective Products.

50.     Plaintiffs have been damaged by Defendants' fraudulent misrepresentations.

8

51.     Because Defendants knew the Defective Products did not meet regulatory requirements, Plaintiffs' requirements, or their own stated requirements, Defendants' conduct was outrageous, reflected an evil motive and/or was in conscious disregard for Plaintiffs' rights, such that Plaintiffs are entitled to an award of punitive damages in an amount determined by a jury of their peers.

WHEREFORE, Plaintiffs respectfully request judgment against Defendants in an amount to be proven at trial in excess of $75,000, for the costs incurred herein, punitive damages, for pre- and post-judgment interest, and for such other relief as the Court deems just and proper.

## COUNT IV
## NEGLIGENT MISREPRESENTATION
### (Against EST and Patel)

52.     Plaintiffs reallege and incorporate by reference the above allegations as if fully stated herein.

53.     Throughout the time Plaintiffs purchased the Products, Defendants made false representations, including:

    a.   That the Products met regulatory requirements;

    b.   That the Products met Plaintiffs' requirements;

    c.   That the Products contained what was on their label;

    d.   That certain fertilizer Products contained nanotechnology; and

    e.   That the 32-0-0 Product had less than 2% salt.

54.     Defendant Patel—acting in his individual capacity and as representative of EST—made these representations repeatedly over the course of Defendants' relationship with Plaintiffs. The representations were made during in-person meetings at the EST facility, during phone calls,

on the labels affixed to the Defective Products, on invoices that accompanied the Defective Products, and in other written communications.

55.     Defendants failed to exercise reasonable care in obtaining or communicating this false information.

56.     Plaintiffs reasonably relied on the false information provided by Defendants.

57.     Plaintiffs were the entities for whom the false information was supplied and/or Defendants knew the information would be communicated to Plaintiffs.

58.     Defendants intentionally made such representations so that Plaintiffs and others would purchase the Defective Products.

59.     Plaintiffs reasonably relied upon Defendants' representations related to the Defective Products.

60.     Plaintiffs have been damaged by Defendants' misrepresentations.

61.     Because Defendants knew the Defective Products did not meet regulatory requirements, Plaintiffs' requirements, or their own stated requirements, Defendants' conduct was outrageous, reflected an evil motive and/or was in conscious disregard for Plaintiffs' rights, such that Plaintiffs are entitled to an award of punitive damages in an amount determined by a jury of their peers.

WHEREFORE, Plaintiffs respectfully request judgment against Defendants in an amount to be proven at trial in excess of $75,000, for the costs incurred herein, punitive damages, for pre- and post-judgment interest, and for such other relief as the Court deems just and proper.

Dated: October 14, 2019      Respectfully submitted,

               BOULWARE LAW LLC

                /s/ Brandon J.B. Boulware

| | |
|---|---|
| Brandon J.B. Boulware | KS # 25840 |
| Erin D. Lawrence | KS # 25153 |

               1600 Genessee, Suite 416
               Kansas City, MO 64102
               Tele: (816) 492-2826
               brandon@boulware-law.com
               erin@boulware-law.com

               ***Counsel for Plaintiffs***